[No. 11271.  Department One.  May 6, 1914.]

EVERETT FRIEZE, *Plaintiff-Appellant*, v. J. F. POWELL *et al.*,
*Defendants*, and MERLE & HEANEY MANUFACTURING
COMPANY, *Garnishee-Defendant, Respondent.*[1]

JUDGMENT—BY DEFAULT — VACATION — PETITION.  An application
for the vacation of a default judgment for the reason that process
was not served upon any officer or agent upon whom service was
authorized, falls within Rem. & Bal. Code, § 464, subd. 3, permitting
the vacation of judgments for irregularity in obtaining them; and
under Id., § 467, need only be by petition verified by affidavit, no
affidavit of merits being necessary.

SAME—PETITION—VERIFICATION.  A petition for the vacation of a
default judgment, required by Rem. & Bal. Code, § 467 to be veri-
fied by affidavit, may be verified by the attorney instead of an officer
or agent of a corporation, especially where the petition shows want
of jurisdiction in the court to render the judgment for want of
proper service, within Id., § 464, subd. 3.

CORPORATIONS—FOREIGN CORPORATION—ACTIONS — GARNISHMENT—
SERVICE OF PROCESS.  The service of a writ of garnishment upon a
local manager of a foreign corporation is sufficient, in view of Rem.
& Bal. Code, §§ 687 and 226, providing for service upon nonresident
corporations by delivery to any agent, cashier or secretary thereof.

GARNISHMENT—WRIT—SERVICE—WAIVER.  Appearance by a gar-
nishee requesting permission to defend the writ·without preserving
a special appearance, waives objection to the sufficiency of the
service.

JUDGMENT—BY DEFAULT—VACATION—GROUNDS—DISCRETION.  It is
not an abuse of discretion to vacate a default judgment against a
foreign corporation, on application made within five days after
entry of the judgment, where it appears that service was made
upon a salesman of the corporation who failed to take the neces-
sary steps through ignorance, in view of the liberality of the stat-
utes authorizing service upon agents not familiar with legal pro-
ceedings, requiring an equally liberal discretion in vacating de-
faults.

GARNISHMENT—ANSWER—SUFFICIENCY.  Upon an application to
vacate a default judgment against a garnishee, a petition stating
that the garnishee owed no debt to the defendant and had in its

[1]Reported in 140 Pac. 690.

possession no goods belonging to the defendant, states facts constituting a meritorious defense, and not a mere conclusion to that effect.

TRIAL—BY COURT—FINDINGS OF FACT—NECESSITY. Rem. & Bal. Code, § 307, requiring findings of fact and conclusions of law upon issues of fact tried to the court, has no application to the trial on a petition to vacate a judgment of default because of excusable neglect, mistake, or inadvertence, since it is addressed to the discretion of the trial court and is reviewable on appeal upon the whole record.

GARNISHMENT—ANSWER—SIGNING. Rem. & Bal. Code, § 690, providing that the answer of a garnishee shall be under oath, in writing, and signed by the garnishee is sufficiently complied with where the secretary of the garnishee swore to and signed a verification stating that he had read the answer, knew the contents thereof, and believed the same to be true.

SAME—TRIAL—ISSUES AND PROOF. In proceedings against a garnishee, under an answer of "no funds" and "nulla bona," the garnishee may show that the defendant had overdrawn his account at the time of the service of the writ.

SAME—OPERATION AND EFFECT—DEBTS SUBSEQUENTLY ACCRUING. A writ of garnishment only holds the moneys or goods of the defendant in the hands of the garnishee at the time of the service of the writ, or at any time thereafter until the service of the answer of the garnishee, and not debts created or salary earned thereafter until the time of the trial; in view of Rem. & Bal. Code, § 683, requiring the garnishee to answer as to what moneys or effects of the defendant he has in his possession or had when the writ was served; Id., § 688, prohibiting the delivery of debts or effects to the defendant after service of the writ, and §§ 692 and 693 relating to the form of the judgment; and in view of Id., § 703, exempting from garnishment current wages or salary to the amount of $100, for a period of four weeks.

Appeal from a judgment of the superior court for King county, Tallman, J., entered February 26, 1913, upon findings in favor of a garnishee, after a trial to the court. Affirmed.

*Edward Nelson Sears*, for appellant.

*Frank A. Paul*, for respondents Powell et al.

*Hastings & Stedman*, for respondent Merle & Heaney Manufacturing Company.

ELLIS, J.—This is an appeal by the plaintiff, at whose instance a writ of garnishment was issued, from an order vacating a default judgment against the garnishee defendant and from the judgment rendered thereafter upon the trial. The record discloses the following facts: On August 19, 1912, the plaintiff recovered a judgment in the sum of $461.15 against the defendants Powell and wife. Powell was, at the time, employed by the garnishee defendant, Merle & Heaney Manufacturing Company. To avoid confusion, we shall designate the parties throughout as plaintiff, defendant and garnishee. The garnishee is a corporation of the state of Illinois, doing business in the state of Washington, having its principal place of business in Seattle.

On August 31, 1912, the plaintiff sued out a writ of garnishment and caused a copy thereof to be served on the garnishee by delivering the same to one Charles Hedreen, who, it is alleged, was its manager in Seattle. Hedreen took no action in the matter, and on September 21, 1912, the plaintiff procured an order of default, and on the same day a judgment against the garnishee for the full amount of the judgment against the defendants Powell with interest and costs. On September 25, 1912, a petition to set aside the default and vacate the judgment was filed. This petition was verified by one of the attorneys for the garnishee, the verification stating that he made the affidavit on behalf of the corporation for the reason that no officer of the corporation was then within King county, and that the allegations of the application were true as he verily believed. The grounds for vacation of the judgment set up in this petition were two-fold. It is first alleged that the court acquired no jurisdiction to enter the judgment because Hedreen, upon whom service was made, was not the cashier or secretary of the corporation, nor its agent upon whom service might be made, and that he was only a salesman in the employ of the garnishee, not an officer, director or trustee, and had no

charge of any legal business of the corporation. It is then alleged:

"That, at the time said pretended writ of garnishment was attempted to be served upon said Charles Hedreen, the Merle & Heaney Manufacturing Company was not indebted to the said J. F. Powell or to Mildred Powell, his wife, in any sum whatsoever, nor did it, at said time, have in its possession or under its control any property or effects belonging to said J. F. Powell or said Mildred Powell, his wife, nor did said J. F. Powell or Mildred Powell, his wife, own or have an interest in any shares of stock in said corporation, but on the contrary, on August 31, 1912, and at all times since, said J. F. Powell, defendant in this action, was indebted to the Merle & Heaney Manufacturing Company for a considerable sum of money, and that, therefore, this garnishee had a complete defense to said writ of garnishment."

On October 5, 1912, a hearing was had upon the petition and an affidavit of the defendant Powell to the effect that, at the time the writ of garnishment was served, he was indebted to the garnishee and that the garnishee did not then owe him and has not since owed him anything. His affidavit also set up the fact that Powell is a married man, has a family living with him dependent upon him for support; that his salary is $100 a month, and claimed his exemption. Affidavits were also presented, controverting the allegations of the petition as to the garnishee's indebtedness to Powell, and setting up the fact that Hedreen was the manager and managing agent of the garnishee, and was so held out and advertised by the garnishee in Seattle and King county, and as such had verified the assessment schedule of the garnishee for the purpose of taxation. These latter allegations were not controverted in any manner. It is asserted in the plaintiff's brief that the court, upon the hearing, refused to consider any of these affidavits, but we fail to find anything in the record reasonably justifying this statement. On the contrary, the court, on October 8, 1912, signed an order vacating the judgment which expressly states that the court considered the applica-

tion and affidavits in support thereof as well as the affidavits in resistance, and found that justice would be subserved by opening the default, vacating the judgment, and allowing the garnishee to answer.

Though the original answer is not in the record before us, the record shows that such an answer was presented at the time of this hearing, since on that date the plaintiff moved to strike the answer because it was verified by the attorney. This motion was granted and fifteen days allowed to file an amended answer. On October 29, 1912, the garnishee filed its amended answer, signed by its attorney, but verified by its secretary in Chicago, Illinois. In this answer, the garnishee alleged that, at the time of service of the writ upon Hedreen, the manufacturing company was not indebted to the defendants Powell and did not have in its possession any property belonging to them, and has not, at any time since the service of the writ, owed them any money or had in its possession any of their property, and that they did not, either at the time of the service of the writ or since that time, own any shares of stock in the garnishee company. An affidavit of the plaintiff controverting this amended answer was filed and a motion to strike this amended answer was apparently made, since there is in the record a journal entry denying the motion, but neither the motion itself nor any of the grounds upon which it is based in any manner appears in the record.

The cause was tried before the court without a jury upon the issues raised by this amended answer and the controverting affidavits on January 23, 1913. The evidence shows that, prior to the service of the writ, the defendant Powell was employed by the garnishee on a salary of $100 a month, which was paid $50 on the 15th and $50 on the last day of each month; that he has been continuously so employed from the date of the service of the writ to the date of the trial; that he had earned from August 1, 1912, to the date of the trial, January 23, 1913, $588.45; that at times prior to

August 31, there had been advanced to him sums aggregating $46.75 on his I. O. U's, which were carried by the garnishee in its cash account; that on August 15, he was paid $50 and on August 31, $21 of the amount which had been advanced to him was charged against his salary, leaving a balance of $29 of his salary then due, which was then paid to him; that of his debt to the garnishee, there remained $25.75, which was not deducted from his salary on that date, and which he still owed to the garnishee. It thus appeared that the garnishee really owed Powell on August 31, 1912, only $3.25.

The evidence further showed that, from August 31 up to October 25, when the amended answer was verified, Powell had earned $196.15; that Powell is the head of a family which is dependent upon him, and that the garnishee has advanced to him upon his salary, during the period since August 31, from $50 to $60 a month. The court made findings of fact reciting the entry of the original judgment against the defendants Powell, the service of the writ of garnishment, the employment of Powell by the garnishee, and found that, on August 31, 1912, Powell was indebted to the garnishee in the sum of $46.75; that on that date the garnishee paid Powell $29 of the $50 then due him as salary, applying $21 on Powell's indebtedness to the garnishee, but expressly found that it did not appear that this was done prior to the service of the writ upon the garnishee. The court found that, since the service of the writ, the defendant Powell has earned $588.45, and had earned, up to October 25, 1912, the sum of $196.15 for salary. The court concluded, as a matter of law, that the garnishee was liable to the plaintiff for $196.15, less the exemption of $100 claimed by Powell, and less the $25.75 still owing by Powell to the garnishee of the amount which he owed at the date of the service of the writ, and that the plaintiff is entitled to judgment against the garnishee for $70.40 and costs. Judgment was entered accordingly and this appeal followed.

The plaintiff contends that the court erred, (1) in setting aside the default and vacating the judgment; (2) in refusing to make findings in support of the order vacating the judgment; (3) in denying the motion to strike the amended answer; (4) in admitting evidence of Powell's indebtedness to the garnishee; (5) in ruling that the service of the writ attached only that portion of the principal defendant's salary which accrued prior to the date of the filing of the garnishee's answer.

I. It is admitted that the vacation of a default judgment is a matter which rests in the sound discretion of the trial court, but it is urged that, in this case, that discretion was abused, in that the application was fatally defective in form and was wholly wanting in merit.

The application, as we have seen, was, in form, a petition verified by the attorney for the garnishee. The plaintiff claims that it was fatally defective in that it was not supported by an affidavit of merits. The application rested upon two grounds. The first was that the service of the writ was ineffective because not made upon any officer or agent of the garnishee. The application on this ground would necessarily fall under the third subdivision of Rem. & Bal. Code, § 464 (P. C. 81 § 1163), which permits the vacation or modification of judgments for mistake, neglect, or omission of the clerk, or irregularity in obtaining the judgment or order. The second ground was that the person upon whom service was made, being ignorant of such matters, failed to take the necessary steps to protect the interests of the garnishee until after the default was entered. Were it not that another section of the statute more appropriately covers this ground, it also might reasonably be held to fall within the same section, the seventh subdivision of which permits the vacation for unavoidable casualty or misfortune, preventing the party from prosecuting or defending. Section 467 (P. C. 81 § 1169) provides that applications to obtain the benefit of subdivisions 3 and 7 of § 464 shall be by peti-

tion, verified by affidavit, etc. There is no requirement that such a petition shall be supported by an affidavit of merits, but only that the petition shall be verified by affidavit. If the application be considered as controlled entirely by § 464, it fully complied with the statute, both in substance and form. *Wheeler v. Moore,* 10 Wash. 309, 38 Pac. 1053.

The last ground of the application, however, more properly falls within the provisions of Rem. & Bal. Code, § 303 (P. C. 81 § 295), permitting the court, upon affidavit showing good cause therefor, after notice to the adverse party, to relieve a party from a judgment, order or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect. It is urged that, under this section, the application should have been supported by an affidavit of some officer or agent of the garnishee, showing the excusable neglect claimed. There is nothing in the record, however, indicating that this particular matter was called to the attention of the trial court and, in any event, since the verification states that no officer of the corporation was, at the time, within King county, we think the petition was sufficient to confer jurisdiction upon the court. In support of his position, the plaintiff relies mainly upon *Bailey v. Taaffe,* 29 Cal. 423, which holds that such an application should be based upon an affidavit made by the moving party himself and not by his counsel. In the later decision of *Melde v. Reynolds,* 129 Cal. 308, 61 Pac. 932, the supreme court of California held that a motion signed by an attorney is sufficient to invoke the jurisdiction of the court and that an affidavit of merits made by the defendant in person is not a jurisdictional element. The court said:

"The discretion of the court ought always to be exercised in conformity with the spirit of the law, and in such a manner as will subserve rather than impede or defeat the ends of justice; regarding mere technicalities as obstacles to be avoided rather than as principles to which effect is to be given in derogation of substantial right."

We think when the remedial purpose of the several sections of the statute above referred to is considered, the application, though not verified in person by any officer or agent of the corporation, but only by its attorney, was sufficient in form.

The contention that the application was wanting in merits also rests upon two grounds. It is first claimed that the service of the writ upon the local manager of the garnishee was sufficient. The statute, Rem. & Bal. Code, § 687 (P. C. 81 § 492), provides that writs of garnishment shall be served in the same manner as the summons in an action is served. Section 226 (P. C. 81 § 143-5), touching service of summons, provides (subd. 9) that, if the suit be against a foreign corporation or nonresident joint stock company or association doing business within this state, the service may be made by delivery to any agent, cashier or secretary thereof. Construing this section, we have held that service made upon any agent having representative authority is sufficient. *Barrett Manufacturing Co. v. Kennedy*, 73 Wash. 503, 131 Pac. 1161. In *Tatum v. Niagara Fire Ins. Co.*, 43 Wash. 373, 86 Pac. 660, we held that service of a writ of garnishment by delivery to a local agent authorized to solicit insurance was sufficient service upon a nonresident insurance company, and that the mode of service provided by Rem. & Bal. Code, § 6095, requiring the appointment of statutory agents for such companies doing business in this state, with authority to accept service of process, is not exclusive, but is cumulative to that provided for in subdivisions 6 and 9 of section 226 (P. C. 81 § 143-5). See, also, *Sievers v. Dalles, Portland & A. Nav. Co.*, 24 Wash. 302, 64 Pac. 539; *Lee v. Fidelity Storage & Transfer Co.*, 51 Wash. 208, 98 Pac. 658. We hold that the service of the writ upon the garnishee's local manager was a sufficient service.

The garnishee urges that this service was insufficient because the copy of the writ served was not certified under the seal of the court. The statute makes no provision that it

shall be.   Moreover, the garnishee, by appearing and request-
ing permission to defend the writ, without preserving a
special appearance, must be held to have waived objection to
the sufficiency of the service.   *Larsen v. Allan Line Steam-
ship Co.*, 37 Wash. 555, 80 Pac. 181, 9 L. R. A. (N. S.)
1258; *Gaffner v. Johnson*, 39 Wash. 437, 81 Pac. 859; *Sea-
ton v. Cook*, 45 Wash. 27, 87 Pac. 914; *Teater v. King*, 35
Wash. 138, 76 Pac. 688.

The second ground of the plaintiff's contention that the
application was without merit is based on the claim that the
application made no showing of excusable neglect.   In this
connection, reliance is placed mainly upon the decision in
*Moody v. Reichow*, 38 Wash. 303, 80 Pac. 461.   In that
case, the motion to vacate the judgment was made after
service of the motion by the defendant for a cost bond, and
after a motion for default had been served and had been
pending for more than a year without further appearance
by the defendant.   The facts set up in the application as
showing excusable neglect were that the defendant had em-
ployed counsel whom he expected to take care of the case;
that he understood the English language imperfectly and
that it was difficult for him to make known his defense.   The
court held that it was an abuse of discretion to vacate the
default judgment after the lapse of so long a time when the
record showed nothing more than neglect.   The case before
us, however, comes much more nearly within the facts found
in *Spoar v. Spokane Turn-Verein*, 64 Wash. 208, 116 Pac.
627, in which the application stated facts closely similar to
those in the *Moody* case, but the application was made
promptly after default and judgment had been entered.   The
vacation of the judgment was held not an abuse of the court's
discretion.   In the present case, the application was made
within five days after the entry of judgment.   In view of the
liberal rule of service permitted by our statute, by which
service on foreign corporations often may be made upon
agents not at all familiar with legal proceedings, as appears

by the application in this case, there should be permitted an equally liberal discretion in vacating defaults founded on such service to the end that justice may be done. This is especially true where, as here, the application is made in a short time after default. We hold that there was a sufficient showing of excusable neglect. The trial court did not abuse its discretion in setting aside the judgment.

It is also claimed that no meritorious defense was shown. It is argued that the statement in the application that there was a meritorious defense was a mere conclusion. In this connection, reliance is placed upon *Hoefer v. Sawtelle*, 43 Wash. 23, 85 Pac. 853. In that case, the petition contained nothing but the "bare conclusion that the appellants have a meritorious defense to the action." The petition here, however, specifically states that the garnishee owed no debt to the principal defendant, and had in its possession no goods belonging to the defendant. These things were not conclusions, but allegations of fact which, if established, would constitute a meritorious defense.

II.   We find no merit in the claim that the court erred in refusing to make formal findings in support of its order vacating the judgment. The plaintiff bases his claims in this particular upon Rem. & Bal. Code, § 470 (P. C. 81 § 1179), which provides that, in such cases, the court may first try out and decide upon the grounds to vacate or modify the judgment before trying or deciding upon the validity of the defense, and also on Rem. & Bal. Code, § 367 (P. C. 81 §645), which provides that, upon the trial of an issue of fact by the court, its decision shall be in writing and that the facts found and the conclusions of law shall be separately stated. We have repeatedly held that the last section mentioned has no application to equitable actions which are triable *de novo* on appeal. The application to vacate judgments entered by default because of excusable neglect, mistake, or inadvertence is, as we have seen, addressed to the sound discretion of the trial court. That discretion is also reviewable here upon

the entire record. We have often held that we will not re-
view the action of the court upon matters addressed to its
discretion without having before us all of the evidence upon
which it acted. It seems clear that there is no more reason
for requiring formal findings of fact in such a case as this
than in equitable actions triable to the court. We hold that
the provisions of § 367 have no application to such cases.

III. The claim that the court erred in refusing to strike
the amended answer is based upon the fact that it was not
signed by any officer of the garnishee defendant, though it
was verified by its secretary. There is nothing in the rec-
ord to show that this matter was ever called to the attention
of the trial court. While there is in the record a journal
entry indicating that the court overruled a motion to strike
this answer, the motion itself does not appear. Moreover,
the secretary of the garnishee defendant, in his verification,
states that he has read the answer, knows its contents, and be-
lieves the same to be true. He signed this verification, swear-
ing to the contents of the answer. This was a sufficient sign-
ing within the meaning of the statute, Rem. & Bal. Code,
§ 690 (P. C. 81 § 497), which provides that the answer shall
be under oath, in writing, and signed by the garnishee.
There are decisions to the contrary, but the other rule seems
to us highly technical and not in keeping with the liberal rule
which we have always indulged in construing pleadings.

IV. The contention that the court erred in admitting
evidence that the defendant Powell, prior to the service of
the writ, had been permitted to anticipate his salary to the
extent of $46.75 is based upon the theory that this was a
counterclaim against Powell of which evidence could not be
admitted against the plaintiff without pleading it as such.
The garnishee's amended answer was "no funds" and "*nulla
bona.*" Under this plea, and under the liberal rule of con-
struction required by statute, Rem. & Bal. Code, § 285 (P.
C. 81 § 259), the garnishee was entitled to introduce any
evidence showing the condition of its account with the defend-

ant Powell at the time of the service of the writ. That account showed that, at that time, he had anticipated his salary in the sum of $46.75. Under this issue, raised by the petition and the contesting affidavit, this evidence was properly admitted. There are decisions from other jurisdictions to the contrary, but we think that pleadings in a garnishment proceeding should be construed with much liberality to the end that substantial justice may be done.

V. The trial court held that the writ of garnishment served to attach only that portion of the salary of the principal defendant which accrued prior to the filing of the answer of the garnishee. The plaintiff insists that the writ should be held to attach the defendant's salary up to the date of trial, and that this court has so held in *Tatum v. Geist*, 40 Wash. 575, 82 Pac. 902. It is true that the language used *arguendo* in that decision would, at first, seem so to indicate, but the exact question here involved was not present in that case. The matter there decided was that an order quashing the service of a writ of garnshment is appealable as a final determination of a proceeding. A review of the sections of the code governing garnishments seems to us to justify the view that the writ serves only to hold moneys or goods of the defendant in the hands of the garnishee at the date of the service of the writ, or at any time thereafter until the service of the answer of the garnishee and to hold such moneys or goods coming into his hands at any time before trial, but pursuant to any contract or agreement creating an obligation to pay the money or hold the goods, subsisting as an obligation at the time of service or answer or at any time between those dates. The decision in *Tatum v. Geist* is not necessarily contrary to this view. Rem. & Bal. Code § 683 (P. C. 81 § 485), provides that the writ shall command the garnishee to appear and answer under oath "what, if anything, he is indebted to the defendant and was when such writ was served, and what personal property or effects, if any, of the defendant he has in his possession or

under his control, or had when such writ was served." Section 685 (P. C. 81 § 489), prescribing the form of writ, uses substantially the same language. Section 688 (P. C. 81 § 493) declares that it shall not be lawful for the garnishee to pay to the defendant any debt or to deliver to him any effects after the service of the writ. Section 692 (P. C. 81 § 501), declares that, if the garnishee make default, the court may render judgment against him for the full amount claimed by the plaintiff against the defendant, or, in case judgment has been rendered against the defendant, for the the full amount of such judgment with interest and costs. Section 693 (P. C. 81 § 503) provides that, if it appear from the answer of the garnishee or otherwise that the garnishee is indebted to the defendant or was so indebted when the writ was served, judgment shall be entered in favor of the plaintiff and against the garnishee for the amount of such indebtedness. It seems to us that, construing these sections together, they look to a trial of the issue presented by the answer of the garnishee, which issue can only speak as of the date of the answer. Of course, if the answer discloses, or the evidence shows, a contract obligation from the garnishee to the principal defendant, arising before answer and still subsisting, though not yet due, the debt created by such an obligation would be held by the writ of garnishment till the date of trial, since proof of that fact would fall within the issue presented by the answer, and the controverting affidavit, if the answer is controverted. But as to debts *created* or salary *earned* subsequent to the answer or moneys or goods of the defendant coming into the garnishee's hands subsequent to the answer, and in good faith wholly independent of any antecedent contract or agreement, the contrary would be true. They are not within any issue presented by the answer, nor raised by the controverting affidavit. Salary of a defendant may be garnished as soon as earned, though before it becomes due, but it cannot be garnished before it is earned. *Bambrick v. Bambrick Bros. Const. Co.*, 152 Mo. App. 69,

132 S. W. 322. This would seem to follow from the clear analogy between garnishment and attachment. An attachment holds only the goods attached. The issue of ownership presented speaks as of the date of the attachment. The same would be true in the case of garnishment but for the fact that, by the statute, the garnishee is required to answer under oath not only what, if anything, he *was indebted* to the defendant when the writ was served, but *is indebted* when he answers. To hold that salary or wages unearned at the time of answer, but earned between that time and the time of trial, is attached by the writ would work a hardship upon a defendant who is earning a salary and is the head of a dependent family. Such a defendant is entitled to have exempt from garnishment current wages or salary to the amount of $100. Rem. & Bal. Code, § 703 (P. C. 81 § 523). There is no provision for an exemption for $100, or any other sum, from his salary for each month, or for any period longer than four weeks. To construe the garnishment statute as holding the salary of a defendant so situated up to the date of the trial would deprive him, if the trial were for any reason long delayed, of any means of supporting his family during the interval between answer and trial. Such a holding would seem to be both unjust and unnecessary; unjust in that it would deprive the family of the defendant of any means of support; unnecessary in that successive garnishments may be issued by a plaintiff. Such successive garnishments would permit the defendant to claim his exemption in each case out of the fund accruing from his salary up to the date of the answer. Our construction meets the full purpose of the garnishment law. It affords a remedy to the creditor without depriving the debtor of the reasonable exemption provided in the same connection. The remedial character of the garnishment should not be held to override the humane purpose of the exemption. As said by the Missouri Court of Appeals:

"As an original proposition the doctrine is unpalatable to us that the future wages of the head of a family, even though he resides in another state, can be thus appropriated. Considering the fact that the business of many mercantile, manufacturing and other establishments range over other states than those where the concerns are domiciled, and that they often have numerous foreign employes, we can easily see how a great hardship may be entailed by allowing unearned salaries to be thus seized, especially as our garnishment statutes carry the lien of the garnishment to the date of the garnishee's answer. Such companies may be deprived of the services of useful employes, who will refuse to continue to work for them if repeated garnishments continually absorb their wages so that they cannot support their families." *Dinkins v. Crunden-Martin Woodenware Co.*, 99 Mo. App. 310, 73 S. W. 246.

The answer is required to speak as of its date. If controverted, the issue is framed on that answer and necessarily speaks as of that date. The trial is had of that issue; not of an issue which rests on facts arising subsequent to that date. Under statutes making the writ of garnishment take effect on all debts due at service or "thereafter to become due," it is generally held unearned wages do not constitute a debt either due or to become due within the statutory meaning. *Thomas v. Gibbins*, 61 Iowa 50, 15 N. W. 593; *Foster v. Singer*, 69 Wis. 392, 34 N. W. 395, 2 Am. St. 745. A review of decisions cited from other jurisdictions would be of little profit, however, the statutes being, in most cases, not the same as our own. We find no error warranting a reversal or modification of the judgment.

It is affirmed.

CROW, C. J., MAIN, CHADWICK, and GOSE, JJ., concur.