DETERMINED IN THE

# SUPREME COURT

OF

# WASHINGTON

[No. 13852. Department One. June 15, 1917.]

DuBois Lumber Company, *Respondent*, v. L. T. Dietderich
et al., *Defendants*, Claude Harris et al., *Respondents*,
Ben J. Bell et al., *Appellants.*[1]

Logs and Logging—Liens—Waiver—Sale and Appropriation of
Purchase Money. Laborer's liens on logs are not waived by an
agreement allowing a purchaser to advance freight and booming ex-
penses and saw the logs prior to execution sale, where no one was
prejudiced, in view of Rem. Code, § 1177, making it the duty of the
purchaser of liened logs to apply the purchase money to the satis-
faction of *bona fide* liens; and this applies to liens for which no suit
to foreclose had been instituted.

Garnishment—Property Subject. Where logs had not come in-
to the possession of a garnishee at the time the writ was served and
answered, he would not be liable therefor under the writ.

Logs and Logging — Laborers' Liens — Priority Over Garnish-
ment. Where laborers had prior liens upon saw logs, which were
sold and sawed up and produced a fund which it was the duty of the
purchaser to apply in satisfaction of the liens, a garnishment of the
purchaser is ineffectual, even though the logs were in the purchas-
er's possession at the time the writ was served and answered; Rem.
Code, § 1206, giving priority to the laborers' liens.

Appeal from a judgment of the superior court for Clarke
county, Back, J., entered April 17, 1916, upon findings in
favor of certain defendants, in an action of interpleader, tried
to the court. Affirmed.

[1]Reported in 165 Pac. 884.

*H. W. Arnold* and *R. C. Sugg*, for appellants.
*McMaster, Hall & Drowley*, for respondents.

MAIN, J.—The plaintiff in this case, having in its posses-sion the sum of $1,176.85, to which it made no claim, and there being a number of other parties asserting conflicting rights to the fund, brought this action in interpleader for the purpose of having the conflicting claims to the fund deter-mined. All parties interested were made defendants in the action. From the judgment entered, two of the defendants appeal.

The facts out of which the litigation grew are substantially these: Henry Haselhorst, one of the appellants, on the 9th day of February, 1915, being then the owner of about 160 acres of timber land situated in Clarke county near the town of Yacolt, sold the standing timber thereon to L. T. Dietder-ich and John Studer, copartners doing business under the name of Dietderich & Studer. The purchase price was $1.50 per M, according to the scale of the Northern Pacific Railway Company, over which road the logs were to be transported from Yacolt to Vancouver. Dietderich & Studer then sold the logs to the respondent DuBois Lumber Company, for $6.50 per M, mill scale, delivered at the company's mill in Vancouver. According to the terms of the contract between Dietderich & Studer and Haselhorst, payment was to be made to the latter on the 10th day of each month for all logs cut during the previous month. Dietderich & Studer, after mak-ing the contract to deliver the logs to the DuBois Lumber Company, proceeded with their logging operations. The first few payments due Haselhorst were made to him direct by Dietderich & Studer. About June, 1915, or a few months after operations had been in progress under the contract, Haselhorst became dissatisfied with the manner in which Diet-derich & Studer were making the stumpage payments, and went to the DuBois Lumber Company and asked it to hold out for him the money due him for stumpage. He was told

by that company that it would hold out the stumpage, but that it would not guarantee it. Dietderich & Studer subsequently assented to the arrangement made by Haselhorst with the lumber company relative to the payments. All payments due Haselhorst for stumpage under his contract, up to October 1, 1915, were made either by Dietderich & Studer or by the DuBois Lumber Company.

On or about October 26, 1915, Dietderich & Studer ceased logging operations. They were then indebted in a considerable sum for wages due their employees. On October 27, 1915, the labor claimants filed a claim of lien upon the logs then in Clarke county, to secure payment of the work and labor performed by each of them, and immediately after commenced an action to foreclose the same. In this action, judgment was entered in favor of the labor claimants for the amount due them, aggregating $1,660.87, and attorneys' fees in the sum of $88.15. Either before or immediately after this judgment was entered, an arrangement was made with the DuBois Lumber Company to pay the freight on the logs then in the possession of the railroad company, as well as the expense of conveying them through the booms to the mill, and the lumber company agreed to be responsible for the logs or their value at the time they were sold under execution. Upon this judgment, execution was issued, and the liened logs were sold on November 16, 1915, by the sheriff to the DuBois Lumber Company for $1,525.90. The proceeds of this sale were applied upon the labor claimants' judgment, leaving a balance due thereon of approximately $245.85.

On the 27th day of October, the day on which the labor liens were filed, the appellant Ben J. Bell, then having a judgment against Dietderich & Studer, caused a writ of garnishment to be issued and served upon the DuBois Lumber Company. The lumber company answered the writ, admitting the possession of $1,176.85, and alleging that it possessed no other money or property belonging to Dietderich & Studer. This answer Bell controverted. The present ac-

tion was begun on November 17, 1915, and, as above stated, Haselhorst and Bell, the labor claimants, and other interested parties, were made defendants. Bell claimed under his writ of garnishment; Haselhorst, that he was entitled to the fund under an equitable assignment, and that, by virtue of the arrangement which he made with the DuBois Lumber Company in June, which was assented to by Dietderich & Studer, the lumber company became obligated to pay him for all logs which had been cut and delivered to that company subsequent to October 1, 1915. Upon the trial of the action, it developed that the $1,176.85 was the sum of money which the lumber company was owing Dietderich & Studer at the close of business on October 26th for the logs scaled and sawed up to that time. The labor claimants' lien, filed on the 27th, covered logs then in possession of the Northern Pacific Railway Company and held for freight charges, as well as all logs in the booms which were branded "J. S.," this being a designating mark of the Dietderich & Studer logs. On November 16th, when the execution sale took place, all logs were sold which, up to that time, had been scaled and sawed by the mill company. After November 16th, the mill company scaled and sawed other logs branded "J. S." to the value of $206.

. From what has already been said, it appears that there are three sums in controversy: (a) The $1,176.85, which was the balance owing by the lumber company for logs cut up to the close of business on the 26th day of October; (b) the value of the logs cut subsequent to October 26th and prior to the sale on November 16th, amounting to $1,525.90; and (c) the value of the logs cut subsequent to November 16th, amounting to $206. The $1,176.85 item, by the findings and judgment of the trial court, was awarded to Haselhorst. From this judgment, the labor claimants did not appeal. Bell did not except to the findings, and, in this court, joins in Haselhorst's brief. It therefore must be assumed that, as to this fund, he is not seeking to disturb the judgment awarding it

to Haselhorst.  Under these circumstances, no further refer-
ence need be made to this fund.  As to the other two funds,
the appellants claim that the court was in error in awarding
them to the labor claimants, because it is contended that the
labor claimants had waived their right to a lien.  This claim
of waiver is based on the fact that the labor claimants, not
being able to advance the freight on the logs held by the
Northern Pacific Railway Company, and the boom charges,
through their attorneys, arranged with the DuBois Lumber
Company to advance the freight and pay the expenses of
booming, and consented that the logs might be sawed, pro-
vided the lumber company would hold itself responsible for
the value thereof at the time of the sale.  This, we think, did
not amount to a waiver.  In view of the statute (Rem. Code,
§ 1177) which makes it the duty of a purchaser of liened logs
to see that the purchase money has been applied to the pay-
ment of such *bona fide* claims as are entitled to liens upon the
property, the method adopted by the lien claimants of per-
mitting the logs to be sawed before the execution sale took
place, while irregular, should not deprive the lien claimants
of the right to the fund realized upon such sale, in the ab-
sence of a showing that the appellants had been prejudiced
by such procedure.  So far as Haselhorst and Bell are con-
cerned, they were in no worse position, by reason of the pro-
cedure adopted, than they would have been had the foreclosure
of the labor liens been conducted with strict legal formality.

As to the $206 item, prior to this action, no suit had been
begun to foreclose upon the logs which produced that fund,
but in this action all the parties were before the court, and
there appears to be no reason why the court could not award
the fund to the labor claimants in this proceeding as well as
if there had been an independent proceeding to foreclose the
liens.

As already suggested, the statute makes it the duty of one
purchasing logs on which there is a lien, within the thirty
days in which the claimant has a right to file the lien, to see

that the purchase money is appropriated to the satisfaction of the liens, and construing this statute in *Livingstone v. Lovgren*, 27 Wash. 102, 67 Pac. 599, it was said:

"Under § 5945 [Rem. Code, § 1177], *supra*, it will be seen that if the purchaser, purchasing logs on which there is a lien within the thirty days in which the claimant has to file his lien fails to see that the purchase money is appropriated to the satisfaction of the liens, he is liable. Under this section it was lawful for the appellant to purchase the logs for their full value, and apply the proceeds to the lien claims."

In the present case, the lien claimants had valid liens upon the logs which produced the fund of $1,525.90, as well as the $206. The trial court did not err in sustaining the labor claimants' superior rights to these two funds.

There is some controversy over the terms of the arrangement entered into by which the lumber company agreed to hold and pay to Haselhorst each month the money which was due Dietderich & Studer upon the logs sawed during the previous month. The appellants claim that this arrangement obligated the lumber company to pay all such sums to Haselhorst. The respondent lumber company claims that it only agreed to hold out and pay to Haselhorst all stumpage due or to become due under his agreement with Dietderich & Studer, on or about the 10th day of each month, for all "J. S." logs delivered and received during the previous month, but that it did not assume or guarantee such payments. The trial court found that the arrangement was as contended for by the respondent, and from our examination of the record, we are convinced that the testimony amply sustains this finding.

Referring more particularly to the appellant Bell, he would have no claim under his garnishment to the $206 item, because, at the time the writ was answered, the logs which produced this item had not come into the possession of the lumber company. *Frieze v. Powell*, 79 Wash. 483, 140 Pac. 690. He would have no right to the $1,525.90 item, even

though the logs which produced this item were in possession of the lumber company at the time the writ was served and the answer thereto made, because, under Rem. Code, § 1206, the labor claimants' rights under their lien claims were superior to Bell's rights under the writ of garnishment.

The judgment will be affirmed.

ELLIS, C. J., MORRIS, CHADWICK, and WEBSTER, JJ., concur.