## COMMERCIAL PUBLISHING COMPANY *v.* BECK-WITH.

### ERROR TO THE SUPREME COURT OF THE STATE OF NEW YORK.

No. 132. Argued December 19, 1902.—Decided February 23, 1903.

1. Where a right to recover as the result of a judicial sale made under decrees, both of the courts of the United States and of a State other than that in which the action is brought, is unquestionably set up in the complaint, Federal questions exist in the record and a motion to dismiss must be denied.

2. Questions involved in the construction of a contract for the advancement of money and its repayment and the effect of the lien which the lender has on the accounts pledged as security for such repayment, are not Federal in their nature, and this court must assume that the construction given by the highest court of the State in which the action was brought is correct.

3. Where the highest court of a State has construed decrees made by a United States court and a state court of another State authorizing the sale of certain accounts by a receiver as merely authorizing a sale of the receiver's right, title and interest in such accounts, and that such right, title and interest was subject to the lien of one who had advanced money on the faith of a contract authorizing him to collect such accounts and repay himself thereout, such construction is not an unreasonable one, and the burden rests upon the plaintiff in error to show that such construction is in violation of the due faith and credit clause of the Federal Constitution. And the judgment will be affirmed unless the record shows with certainty that such construction did deny due faith and credit to the decrees in question.

A TENNESSEE corporation, styled the Commercial Publishing Company, brought this action in a court of the State of New York to recover from Samuel C. Beckwith a sum of money which, it was averred, belonged to the publishing company. It was alleged in the complaint that the right was derived from one Crawford, who, it was averred, became the owner of certain newspaper advertising accounts, on which payments had been made to Beckwith, the aggregate thereof constituting the amount sued for. The manner in which Crawford was asserted to have acquired the ownership of the accounts will appear in the following statement summarized from the pleadings :

On September 30, 1893, an action was begun in the Chancery Court of Shelby County, Tennessee, to foreclose a deed of trust which had been made by the Memphis Appeal Company, publishers of a newspaper known as the Memphis Appeal-Avalanche. Samuel C. Beckwith was made a party defendant to the cause. Cotemporaneously with the filing of the bill, a receiver of the assets of the newspaper company was appointed, and he continued the publication of the paper. Although the complaint in the action at bar did not set out the nature of the controversy in the Tennessee suit between the trustees, who were plaintiffs in the action, and Beckwith, it was alleged that a short time after the bill was filed Beckwith procured the removal to a Circuit Court of the United States of a separate controversy existing between himself and the trustees, in which court it was averred such controversy thereafter continued. Subsequently, it was alleged, other actions were filed in the Tennessee court against the Memphis Appeal Company, which actions were ultimately consolidated with the trustee cause. It was charged that in the month of April, 1894, like decrees were simultaneously entered in the consolidated actions in the state court and in the one which had been removed to the United States court, and that, under such decrees, a sale was had on June 16, 1894, of the property vested in the receiver, including the accounts due said receiver, representing moneys earned by the receiver in the operation of the newspaper, of which the accounts upon which Beckwith had collected the money sued for formed a part. At this sale, it was alleged, Crawford became the purchaser of all the property embraced in the order of sale, and he thereafter assigned his purchase to the plaintiff.

In an amended answer Beckwith admitted having collected and retained the moneys sued for, and specially denied the other allegations of the complaint. He also set up as a defence that he had collected the moneys in question rightfully, under the authority of an agreement with the Memphis Appeal Company made prior to the execution of the deed of trust heretofore referred to. He further alleged that the receiver never acquired title to the moneys, and had never offered for sale or

sold any right or title thereto.   Subsequently, by supplemental answer, it was alleged that after the execution of the decrees of sale, and on appeal from a final decree which had been entered in the consolidated cause, the Supreme Court of the State of Tennessee adjudicated that the trust deed and all proceedings based thereon were null and void, and that, by reason thereof, the sale in question was a nullity.

The action at bar was tried by a jury, upon an agreed statement of facts.   By direction of the court there was a verdict in favor of the plaintiff for the full amount claimed.   This judgment was affirmed by the appellate division of the Supreme Court of the State of New York.   An appeal was then taken to the Court of Appeals of the State, which reversed the judgment, and ordered the complaint to be dismissed with costs. 167 N. Y. 329.   The judgment of the Court of Appeals having been made that of the trial court, a writ of error from this court was prosecuted.

*Mr. A. Walker Otis* for plaintiff in error.

*Mr. Anthony B. Porter* for defendant in error.

MR. JUSTICE WHITE, after making the foregoing statement, delivered the opinion of the court.

As in the complaint the plaintiff in error unquestionably set up a right to recover as the result of a judicial sale made under decrees, both of courts of the United States and of a State, Federal questions exist in the record, and the motion which has been made to dismiss is therefore denied.

Coming to the merits, the questions for decision are whether due effect was given by the Court of Appeals of New York to the decrees in question.   *Jacobs* v. *Marks*, 182 U. S. 583, 587.

Two questions were considered by the state court in its opinion, viz.: 1, the meaning and effect of the contract entered into between Beckwith and the Memphis Appeal Company; and, 2, whether the rights of Beckwith under the contract had been conclusively adjudicated by the prior litigation in Tennessee.

The agreement referred to was evidenced by two letters and endorsements thereon, and a copy thereof is contained in the margin.[1]

---

[1] Memphis, Tenn., Jan. 3, 1891.

S. C. BECKWITH,
          48 Tribune Building, New York City.

DEAR SIR: In consideration of special efforts which you pledge yourself to make in our behalf to the best of your efforts and ability, and furthermore, in consideration of allowing you nothing in the shape of salary, office rents or traveling expenses, we hereby authorize and appoint you our sole and exclusive agent for a term of five years from September 1, 1891, and sooner if possible, on a plain commission basis of twenty-five per cent on all business for all that portion of the United States, north of a line running east and west with the southerly boundary of Ohio, Missouri, embracing Cincinnati and St. Louis, including these two points.

All applications for rates, space, etc., from aforesaid territory to be referred to you, and in case we should make a deal direct with any parties, agent or advertisers, from your territory (which, however, is not contemplated,) we will allow you the commission named upon same, and refer it to you for collection.

You are to collect all bills and render monthly statements, and to be held responsible for all accounts, except where a concern should fail through no fault of yours, and, in event of that, you are simply to lose your commission, but not to be liable beyond that.

You are not to represent any other morning paper in the State of Tennessee or Arkansas without our consent in writing, but to do all you can in every way, and at all times, within the above territory, to advance the interests of the Appeal-Avalanche.

                    MEMPHIS APPEAL-AVALANCHE COMPANY.
                    T. B. HATCHETT, *Bus. Manager.*

Accepted.    S. C. BECKWITH.

                                        Memphis, Tenn., Jan. 3, 1891.

THE MEMPHIS APPEAL COMPANY,
          Memphis, Tenn.

GENTLEMEN: In consideration of a contract this day entered into by and between us, I hereby agree to advance to you thirty thousand dollars ($30,000.00,) as follows:

$5000 in cash on or before January 7th, $5000 on or before the 12th of January, 1891, then $5000 on the 26th of January, 1891, to take up your note now in the Nassau Bank of N. Y. for that amount. And $15,000 from time to time as you may advise me and so desire.

The amount named of $30,000.00 to be loaned you on the Appeal Company's notes, endorsed by W. A. Collier, and I am to be further secured by a deposit as collateral of an equal amount of the capital stock of your

In disposing of the first question the court held that "The clause of the agreement giving to Beckwith the right to collect all of the bills was evidently intended to give him the control of the proceeds resulting from the advertisements, so that he could apply the same upon his loan to the amount of $1000 per month," and that the clause referred to "was in the nature of an equitable pledge of the receipts for that purpose." It was further held that the receiver of the newspaper took possession of the assets and business thereof subject to the liens and obligations of the corporation, (in other words, took only the interest which the corporation had in the property which it assumed to possess and own,) and as the receiver "accepted and published the advertisements procured by the defendant (Beckwith), he (the receiver) must be deemed to have done so under the contract which the defendant (Beckwith) had with the corporation, and under that contract the defendant had the right to collect the moneys accruing for such advertisements, and to retain out of such collections a sum not to exceed $1000 per month, to be applied upon the loan." It is manifest that the question of the proper construction of this contract being non-Federal in its nature, is not subject to review, and we consequently assume that the construction was correct.

The second question was treated as involving only the issue of *res judicata*. Considering the final decree entered in the consolidated action, and the decree as subsequently entered by the trial court upon the mandate of the Supreme Court of Tennessee, it was decided that the Tennessee court "did not adjudicate nor attempt to determine the right of Beckwith to

---

company, and which stock shall not be increased without my consent during the term of this loan; neither shall any encumbrance be placed upon same.

Said loan and interest at six per cent to be paid me in monthly installments by monies coming into my hands from the advertising in your paper, in amounts, say $1000 per month, until paid.

S. C. BECKWITH.

O. K.: MEMPHIS APPEAL COMPANY.

 T. B. HATCHETT, *Business Manager.*

(Endorsed): As the debt is reduced I will surrender stock collateral *pro rata.*—S. C. BECKWITH.

the moneys received by him for advertisements inserted in the paper by the receiver after his appointment." The court then said—evidently assuming that the last decree embodied the direction for sale—" Under the judgment the purchaser became entitled to all the moneys due and owing to the receiver by reason of the publication of the paper, but moneys that did not belong to the receiver, or to which he was not entitled, did not pass to the purchaser, and we find nothing in the prior decree that is an adjudication upon this question.". In effect, therefore, the Court of Appeals of New York construed the decrees of sale and held that the direction to sell merely authorized a sale of the right, title and interest of the receiver in the accounts in question and left for future determination, in any controversy which might arise in respect thereto, the question of the extent of the interest, if any, of the receiver in such accounts.

The sole contentions which are open for our consideration are, did this judgment fail to give full faith and credit to the judicial proceedings in the Tennessee courts as required by section 1 of article IV of the Constitution, and did it deny due efficacy to a title or right claimed under an authority exercised under the United States. It is strenuously argued that, properly interpreted, the decrees directed a sale of the accounts as they stood on the books of the receiver, and that the effect of the decrees and the sale made thereunder was that any right to or lien possessed by Beckwith in the moneys due upon the accounts was transferred to the proceeds of sale of all the property of the Memphis Appeal.

In considering this question it is to be observed that the records of the proceedings in the actions in which the decrees relied upon were rendered were not offered at the trial below, but that the case was disposed of solely upon an agreed statement of facts, to which certain of the decrees made in those actions were annexed as exhibits. To this agreed statement therefore, and to it alone, we are to look, for the purpose of determining the question presented for decision. A summary of the statement will be found in the margin.[1]

---

[1] On January 3, 1891, the Memphis Appeal Company, then engaged in pub-

It is to be borne in mind that upon the plaintiff in error rested the burden of establishing that the decrees of sale were not given the due effect to which they were entitled, and if it has

---

lishing a newspaper at Memphis, entered into the contract with Beckwith which has heretofore been set out. Beckwith made the advances stipulated and $20,000 thereof was owing to him at the time the action at bar was instituted. While the Memphis Appeal Company was a going concern Beckwith, under the contract aforesaid, procured advertising orders, the indebtedness upon which collected by him was the basis of the recovery sought in this action. After the making of the contract and prior to September 30, 1893, the Memphis Appeal Company executed a deed of trust upon its property to secure certain creditors. On the date named Andrew D. Gwynne and others, the trustees under the deed of trust, brought suit to enforce that instrument. Beckwith was made a party defendant, and a receiver was appointed, who took possession of the property of the Memphis Appeal Company and continued the publication of its newspaper from September 30, 1893, to June 16, 1894. On October 5, 1893, Beckwith procured the removal of the controversy between himself and the trustees into a court of the United States, and that controversy there continued, though it does not appear how it was terminated, if it ever was.

Beckwith served written notice on the receiver that he claimed that his rights under the contract were not affected by the appointment of the receiver, and the receiver replied disputing the right of Beckwith to collect moneys for advertising matter which might be published by the receiver.

After the institution of the trustee suit sundry actions were filed in the same court by general creditors and others against the Memphis Appeal Company, which were afterwards consolidated with the trustee suit. In April, 1894, in the consolidated action, and in the action pending in the United States court, a decree of sale was entered, "on the motion of the several complainants," directing a sale of the property in the hands of the receiver, because of the asserted fact that the property was deteriorating and was not self-supporting. The property which was ordered to be sold, after due advertisement, was thus described in the order:

"The Memphis Appeal-Avalanche newspaper, with all the rights, privileges, benefits, franchises, etc., belonging to or in any way pertaining to same, together with its good will, subscription list, advertising patronage, income and profits, and all the machinery, appliances, furniture, material, property, assets, etc., of every kind and description, and the general outfit of the newspaper now in the hands of the receiver in these causes.

"He will sell all and every kind and description of property in his hands, saving and except the uncollected book accounts of the Memphis Appeal Company, accruing prior to his appointment as receiver, and which were placed in his hands for collection. Such of these accounts as remain uncollected will not be sold.

failed to sustain such burden this court.cannot say that error was committed by the judgment below rendered.

The decrees of sale were made in the consolidated action in

"All accounts which may be or are to become due to the receiver by reason of the operation of the newspaper in his hands will pass to and be acquired by the purchaser at this sale, who will become the full owner of the same. And such purchaser will take the property decreed to be sold herein, subject to all of the contract obligations incurred by the receiver, and will assume the payment of same, including any amount due the receiver on the day of sale for overchecks made by him for personal advances on account of the property in his hands. Excepting only the certificates issued by the receiver for the payment of which the purchaser shall in no way be liable."

After directing that the receiver report his proceedings under the decree to the court, it was further recited as follows:

"The purchaser at the sale herein ordered will acquire the absolute title to all the property decreed to be sold, free from all claims, liens, and encumbrances whatever, save as provided above as to the contract obligations of the receiver; and the proceeds of sale will stand in these causes in lieu and place of the property itself."

Subsequently the decree of sale was modified by directing a sale to be made by the clerks of the respective courts, as commissioners. Respecting the sale and the confirmation thereof, it is recited in the agreed statement as follows (italics not in original):

"13. Thereafter and on the 16th day of June, 1894, said commissioners, acting under the decrees aforesaid, sold at public auction in the city of Memphis, the property aforesaid, *and also all the right, title and interest of said receiver to the various sums set forth in Exhibit B annexed to the complaint herein, and in and to the claims of said receiver against the parties therein mentioned for said advertisements published by said receiver for their account in said Memphis Appeal-Avalanche between September 30, 1893, and June 16, 1894, as aforesaid,* when and where same was struck off to one West J. Crawford, he paying therefor to said J. B. Clough and E. B. McHenry as such commissioners the sum of $65,200, and he being the highest, best and last bidder therefor. That whatever title the receiver had to said sums set forth in Exhibit B was derived from said trust deed and his appointment as such receiver. On the 3d day of July, 1894, decrees were simultaneously entered in said actions thus pending in said Chancery Court of Shelby County, and said Circuit Court of the United States, confirming the sale."

On March 26, 1896, a final decree was entered in the consolidated action determining the rights of a large number of persons, one such being Beckwith, whose claim of a lien on the fund under an execution issued in an action brought by a named party other than Beckwith, in which action judgment had been obtained against the Memphis Appeal Company was

the state court and in the action pending in the United States court, and preceded, by nearly two years, the making of the final decree, which however was entered only in the consolidated cause, and not in the action pending in the United States court. It is disclosed by the record that in two of the actions which were consolidated—that filed by the trustee and one on behalf of certain employés of the Memphis Appeal Company— liens were asserted upon all the assets which came into the possession of the receiver, viz., those embraced in the deed of trust which was sought to be foreclosed. The deed of trust was made long after the execution of the contract between Beckwith and the Memphis Appeal Company, and vested rights, if any, of Beckwith were not affected by the execution of the deed or by the appointment of a receiver. The agreed statement is silent as to what was the controversy between the trustees and Beckwith, but Beckwith, in the correspondence with the receiver claimed that his contract right was unaffected by the receivership. Now, in the recital in the decrees of sale of the property to be sold there is first an enumeration of property generally, in language similar to that contained in the deed of trust; there is then an exemption from sale of uncollected book accounts accruing prior to the appointment of the receiver; and next is the following recital: "All accounts which may be or are to become due to the receiver by reason of the operation of the newspaper in his hands will pass to and be acquired by the purchaser at this sale, who will become the full owner of the same." It may be fairly inferred, that Beckwith then was

overruled and he was allowed an appeal. A portion of the defendants thereafter prosecuted an appeal to the Supreme Court of Tennessee, and after the decision of that appeal a decree was entered in the trial court in conformity to the directions of the Appellate Court, on July 8, 1896. The appeal of Beckwith was disposed of by a general affirmance of the decree below, except as particularly specified in the judgment of the Appellate Court.

Crawford, the purchaser at the sale, "duly assigned and transferred to the plaintiff all his claims, demands and right of action against the defendant, which he acquired by virtue of the sale of June 16, 1894, above referred to." As heretofore stated, the collections made by Beckwith sought to be recovered in the action at bar were made on advertising orders procured by Beckwith under the contract and published by the receiver.

and prior thereto had been making direct collections from advertisers under the assumed authority of the contract, and he was undoubtedly asserting the right to retain the moneys which he might collect upon advertisements which had been procured by him. The sum due upon such accounts for advertisements published by the receiver was small as compared with the main assets in the custody of the receiver, yet, in that portion of the decree which made the liens and encumbrances operative against the proceeds of sale, the entire proceeds of sale and not the proceeds of a particular portion of the property sold were made subject to all liens and encumbrances sought to be enforced in the litigation.

As before stated, the record shows that, in two of the actions which had been consolidated, the complainants were asserting liens against *all* the property which had come into the possession of the receiver, and the decree of sale recites that the sale was ordered upon the motion of the complainants. Beckwith nowhere appears to have been an active participant in obtaining such decree or assenting thereto. It does not even appear that, at the time of the entry of the decrees of sale, he was a party to any of the actions which had been consolidated, for it cannot in reason be so inferred from the mere circumstance that nearly two years after, on the entry of the final decree, he is referred to therein as being a cross complainant in one of the actions seeking to enforce a lien, the nature of which was not disclosed.

The stipulations contained in the agreed statement, particularly the recitals in subdivision numbered 13, lend color to the construction that, as respects the accounts in question, all that was intended to be sold was the right, title and interest of the receiver therein, the nature and extent of which title was left unadjudicated. The expression, " the property aforesaid," used in the paragraph, it may well be argued, was intended to refer to something distinct from the accounts in question, and the language may properly be interpreted as relating to the property covered by the trust deed, which came into the possession of the receiver. A reasonable construction of the paragraph can be adopted supporting the claim that, as regards the accounts,

all that was sold was the right, title and interest of the receiver therein.    In the light, therefore, of all the circumstances which have been detailed, we cannot sustain the contention of the plaintiff in error that the guaranty clause of the decrees, transferring liens upon the property to the proceeds of sale, was intended to apply to the accounts in question without indulging in conjecture and giving to the plaintiff in error ·the benefit of the doubts which arise as to the precise meaning of the decrees.

The parties having chosen to try the case on a statement of facts, which does not afford us the means of saying with that certainty which is required, that the judgment below denied due faith and credit to the decrees in question, we cannot, in view of the burden of proof, reverse the judgment below ; and it is therefore

*Affirmed.*