**AMERICAN FIDELITY FIRE INSUR-
ANCE COMPANY, Plaintiff,**

v.

**PASTE–UPS UNLIMITED, INC., et al.,
Defendants.**

**No. 73 Civ. 617 (MP).**

United States District Court,
S. D. New York.

Nov. 30, 1973.

As Amended Jan. 7, 1974.

Boyle, Feller & Hirsch, New York City, for plaintiff; by Leo H. Hirsch, Jr., New York City, of counsel.

Morrison, Paul, Stillman & Beiley, New York City, for defendant Harwyn Litho, Inc.; by Charles A. Stillman and Julian W. Friedman, New York City, of counsel.

Leibowitz, Platzer & Fineberg, New York City, for defendant Paste-Ups Unlimited, Inc.; by Ephriam K. Leibowitz, New York City, of counsel.

Arkin & Horan, New York City, for defendant Trustees; by John R. Horan, New York City, of counsel.

## DECISION AND OPINION

POLLACK, District Judge.

This is a federal interpleader suit arising under 28 U.S.C. § 1335 to determine the conflicting claims to the proceeds of a $50,000 certificate of deposit issued by a Florida bank to Deductible (Deductible Coverage Agency, Inc.), an insurance agency.

Deductible pledged the certificate of deposit with a New York based insurer, American (American Fidelity Fire Insurance Company) as security for the former's liabilities under a contract between those companies.

While the certificate of deposit was still in American's possession in New York, Deductible was sued in the State of Washington by certain Trustees (named as defendants-claimants in this interpleader suit) on alleged obligations due them. Pending determination of the merits, the Washington Court issued a writ of garnishment at the instance of Trustees directed to American. The writ was served by delivery of it to the Washington State Insurance Commissioner whom American had designated as its agent for service of legal process when it qualified to do business as a foreign corporation in Washington. No steps were taken in the Washington proceedings to reduce any asset of Deductible to possession under this writ of garnishment.

While the Washington lawsuit remained unresolved, certain New York creditors of Deductible, *viz.*, Paste-Ups and Harwyn, claimants herein, sued Deductible in New York and obtained money judgments in their favor. Executions were issued and levied under these judgments on the certificate of deposit held by American in New York. Faced with the conflicting claims thereto, American then brought the proceeds of the certificate to this Court and interpleaded the Washington Trustees and the New York creditors so that the ownership of the fund could be resolved among these rival claimants.

A hearing has been held and proofs were submitted in support of the claims asserted to the fund. For the reasons appearing hereafter, the rights of the New York attaching creditors, in the chronological order of their attachments, are entitled to satisfaction out of the fund, in priority to the claim of the Washington Trustees.

The undisputed facts in more detail are as follows:

On February 8, 1971, American and Deductible entered into a written insurance agency agreement. As security for Deductible's liabilities to American under this agreement the latter endorsed to and delivered to the former, in New York, a $50,000 certificate of deposit issued by the First American Bank of North Palm Beach, Florida, due July 13, 1972. This certificate of deposit remained located physically at American's home office in New York at all relevant times.

The agency agreement between American and Deductible was terminated December 23, 1971, effective March 31, 1972.

On February 18, 1972, G. O. Medack, R. W. Bishop, Jr., and Willis Serr, as Trustees for the Selling Shareholders of Modern Home Builders, Inc. ("Trus-

tees") commenced an action for a monetary recovery, against Deductible and another, in the Superior Court of the State of Washington. On March 10, 1972, the defendants having failed to appear or plead, the Trustees obtained a default judgment against Deductible in the amount of $930,675.00. A Writ of Garnishment thereon was issued on March 27, 1972 addressed to and served on American as garnishee by service upon its local agent to receive service of process, the State Insurance Commissioner.

On April 21, 1972 the default judgment against Deductible was vacated by the Washington Court, which nonetheless directed American to "retain in its possession and under its control subject to further order of [the] Court or stipulation of the parties, all funds, credits and other property in its possession and subject to the Writ of Garnishment issued hereon on March 27, 1972, in which the defendants . . . have any ownership or interest . . . with the same force and effect as such funds and properties are now subject to under said Writ of Garnishment."

On April 26, 1972 American answered the Writ, alleging that, at the time of service thereof, it owed Deductible $1,223.89, representing commissions due Deductible based upon premiums recorded to that date. In response to a direction on the form answer to "list all personal property or effects of defendant in the garnishee's possession or control when the Writ was served," American further stated that it owned by assignment and was in possession of the aforementioned certificate of deposit,[1] pursuant to the agency agreement.

On June 16, 1972 Paste-Ups Unlimited, Inc. ("Paste-Ups") recovered a judgment against Deductible in New York Supreme Court in the sum of $12,480.25 and, on September 28, 1972, caused the Sheriff to serve on American an Execution with Notice to Garnishee based thereon. Similarly, Harwyn Litho, Inc. ("Harwyn") recovered a judgment against Deductible in New York Supreme Court in the sum of $22,741.06 on January 22, 1973, and caused the Sheriff to serve an Execution with Notice to Garnishee on American on February 6, 1973.

In the interim, on August 31, 1972, American had received the sum of $50,-625.00 from First American Bank of North Palm Beach, Florida, as proceeds of the certificate of deposit, including interest. American thereafter held these proceeds in New York.

On February 8, 1973, American commenced the instant action by filing an interpleader complaint with the Clerk of the Court and simultaneously therewith depositing the sum of $33,625.00 into the registry of this Court.[2] An order of interpleader was entered on March 13, 1973.

## I.

An action of statutory interpleader depends on diversity of citizenship, 28 U.S.C. § 1335(a)(1), and thus, under the rule of Erie R. R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), this Court must apply the substantive law of the forum state—i. e., New York. See Royal School Laboratories, Inc. v. Town of Watertown, 358 F.2d 813 (2d Cir. 1966) (by implication). This applies to the choice of law rules of the forum as well. Griffin v. McCoach, 313 U.S. 498, 61 S.Ct. 1023, 85 L.Ed. 1481 (1941); cf. Klaxon Co. v. Stentor Electric Manufacturing Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). However, the law applied must not be in-

---

1. American further recited additional obligations of the parties *inter se* arising out of the agency agreement, as well as certain rights of American Plan Corporation and certain agreements to pay specified attorney's fees. None of these matters are relevant here, all parties having stipulated to the entry of an order authorizing the Clerk to pay $6,288.29 to American in full settlement of its claims.

2. The difference between the $50,625.00 originally received by American and the $33,-625.00 it paid into Court is attributable to the fact that American, pursuant to a stipulation entered into between all the parties to the Washington action on September 25, 1972, disbursed $17,000.00 from the proceeds of the certificate of deposit prior to commencement of the instant action.

consistent with the United States Constitution, in particular article IV, section 1 thereof—the full faith and credit clause.

█ The Supreme Court has stated that "the [full faith and credit] Clause does not make a sister-State judgment a judgment in another State. . . . 'To give it the force of a judgment in another State, it must be made a judgment there [, and can only be executed in the latter as its laws may permit].' McElmoyle v. Cohen, 13 Pet. 312, 325, 10 L.Ed. 117." Williams v. North Carolina, 325 U.S. 226, 229, 65 S.Ct. 1092, 1094, 89 L.Ed. 1577 (1945); see Riley v. New York Trust Co., 315 U.S. 343, 349, 62 S.Ct. 608, 86 L.Ed. 805 (1942); Lynde v. Lynde, 181 U.S. 183, 21 S.Ct. 555, 45 L.Ed. 810 (1901).[3] Recognition—e. g., the affirmative defense of res judicata—is what the Constitution requires, subject only to such exceptions as a lack of jurisdiction in the rendering State (not applicable here).

A foreign judgment is recognized . . . when it is given the same effect that it has in the State where it was rendered with respect to the parties, the subject matter of the action and the issues involved. A foreign judgment is enforced when, in addition to being recognized, a party is given the affirmative relief to which the judgment entitles him. Recognition of a judgment is a condition precedent to its enforcement. Restatement (Second) of Conflict of Laws, ch. 5, Topic 2, at 277 (1969).

The general rule is that "the local law of the forum determines the methods by which a judgment of another state is enforced." Restatement (Second) of Conflict of Laws § 99 (1969); accord, Cole v. Cunningham, 133 U.S. 107, 112, 10 S.Ct. 269, 33 L.Ed. 538 (1890). This is subject to the qualification that they cannot be made so complex and expensive as to make the enforcement of a sister state judgment unduly difficult. Restatement (Second) of Conflict of Laws § 99, comment a (1969); see Broderick v. Rosner, 294 U.S. 629, 55 S.Ct. 589, 79 L.Ed. 1100 (1935); cf. Hughes v. Fetter, 341 U.S. 609, 71 S.Ct. 980, 95 L.Ed. 1212 (1951).

New York provides three alternative methods for the enforcement of sister state judgments. A judgment creditor holding a foreign judgment which is entitled to full faith and credit in New York may enforce his judgment (1) by bringing an action on the judgment, see N.Y. C.P.L.R. § 5406; (2) by moving for summary judgment in lieu of complaint under C.P.L.R. § 3213; or (3) by proceeding under the registration provisions of Article 54 of the CPLR. The method utilized is optional with the judgment creditor. N.Y.C.P.L.R. § 5406. See Restatement (Second) of Conflict of Laws § 99, comment b (1969). Furthermore, the judgment creditor may also utilize the provisional remedy of attachment in New York in proceeding on his foreign judgment. N.Y.C.P.L.R. § 6201(7).

At no time did the Washington Trustees lodge with any enforcement officer in New York copies of any of the following documents: (1) the Washington Judgment; (2) the Washington Writ of Garnishment; (3) the Washington Retention Order. Neither did they commence an action in New York based upon any of the abovementioned Washington proceedings or file with any County or Court Clerk in New York any of the Washington documents referred to above.

---

3. Thus it is important to distinguish between the two forms of respect to which a foreign judgment may be entitled; "recognition" and "enforcement." (For present purposes, we shall treat the Washington order as the equivalent of a judgment of that Court.) To grant judgment to Paste-Ups and Harwyn herein would not be to deny recognition to any judgment of the Washington Court, assuming arguendo that the retention order is such. However, it is enforcement of the Washington order which the Trustees seek, and their entitlement thereto must depend on their compliance with the relevant New York law providing for the enforcement of foreign judgments. See, e. g., N.Y.C.P.L.R. §§ 3213, 5401–5408, McKinney's Consol.Laws, c. 8. See also N.Y.C.P.L.R. § 6201(7).

The Trustees did not seek enforcement in New York of whatever rights they might have under the Washington proceedings. They have no judgment in New York nor have they sought to obtain one; they are not attaching creditors in New York.

 In New York, rival attaching creditors establish priority in the order in which New York executions or New York Orders of Attachment are delivered to the New York enforcement officer, i. e., the appropriate Sheriff. N.Y. C.P.L.R. § 5234(b). The rule in Washington is apparently the same; superiority of claim is established by chronological priority in the service of a writ of garnishment. Lowman & Hanford Co. v. Ervin, 157 Wash. 649, 290 P. 221 (1930). Were there any difference between the rules of the two states, New York, as the forum, would apply its own procedural law, and any conflict between the procedures for ascertaining priority would be resolved in favor of the application of New York's procedure. It should be noted that this is not a denial of full faith and credit to the Washington garnishment. Recognition thereof is not being denied; however recognition alone is insufficient for status as an attaching creditor in New York. *See* footnote 3 *supra; see also* Sanders v. Armour Fertilizer Works, 292 U.S. 190, 206–207, 54 S.Ct. 677, 78 L. Ed. 1206 (1934) (Mr. Justice Cardozo, dissenting).[4]

II.

 The foregoing discussion has been predicated on the assumption that the Trustees obtained some legal right in Washington which New York courts, constrained by the full faith and credit clause, would recognize, if enforcement proceedings were taken in New York under the CPLR. The facts do not require this Court to decide if the Trustees in fact did obtain a recognizable right in Washington. If required to decide whether a recognizable right was created, the result that New York courts would reach would be that the writ of garnishment or the retention order would not be characterized as a "judicial proceeding" which, under article IV, section 1 of the United States Constitution must be given full faith and credit.

That section reads in pertinent part as follows:

> Full Faith and Credit shall be given in each State to the public Acts, Records, and Judicial Proceedings of every other State.

New York would characterize the proceedings had in Washington in order to ascertain whether what purports to be a sister state "judgment" is a "judicial proceeding" within the meaning of the Constitution. Atlas Credit Corp. v. Ezrine, 25 N.Y.2d 219, 303 N.Y.S.2d 382, 250 N.E.2d 474 (1969).[5] At a minimum, New York requires a formal decision rendered in a controversy where the parties have been given notice of the proceedings with an opportunity to be heard; the exercise of discretion or judgment; and something more than merely "the act of the law, invoked by the parties, in executing [their] agree-

---

4. In any event, the Trustees' argument is wide of the mark. At best, the Trustees have chronological priority of *judgment*, not of *execution*.

5. Such characterization by a state court is in no way offensive to either modern notions of federalism or the supremacy clause. "Even though the United States Constitution may, in the public mind, be associated with federal courts, the trustees charged with preserving and applying the federal constitution include in their number state judges as well as federal judges. *See* Angel v. Bullington, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1947); H.

Friendly, Federal Jurisdiction: A General View 90 (1973)." Thistlethwaite v. City of New York, 362 F.Supp. 88, 92 (S.D.N.Y. 1973); *cf.* Tang v. Appellate Division of the New York Supreme Court, First Department, 487 F.2d 138 (2d Cir. 1973). It is not unusual for the New York courts to characterize what is alleged to be a foreign judgment as something other than a judicial act, and thus not entitled to full faith and credit. *See, e. g.,* In re Estate of Einstoss, 26 N.Y. 2d 181, 309 N.Y.S.2d 184, 257 N.E.2d 637 (1970), *noted in* 39 Fordham L.Rev. 536 (1971).

ment." *Id.* at 230, 303 N.Y.S.2d at 391, 250 N.E.2d at 481.

In short, New York has adopted as the definition of "judgment" "the determination . . . pronounced by a competent judge or court, as the result of an action or proceeding instituted in such court, affirming that, upon the matters submitted for its decision, a legal liability does or does not exist." *Id.*

■ Although it is probably an overstatement, however oft repeated that finality is the *sine qua non* of a "judicial act" such as will invoke the full faith and credit clause, *see, e. g.,* Lynde v. Lynde, 162 N.Y. 405, 418, 56 N.E. 979, Ed. 810 (1900); Restatement (Second) of Conflict of Laws § 107 (1969); Restatement of Conflict of Laws §§ 434 (a), 435 (1934), it is clear that a mere interlocutory order, issued by a Court in aid of its jurisdiction, will not be afforded full faith and credit in New York. Sullivan v. McFetridge, 55 N.Y.S.2d 511 (Sup.Ct.1945); National Park Bank v. Old Colony Trust Co., 114 Misc. 127, 186 N.Y.S. 717 (Sup.Ct. 1921). Nor does the Constitution require that it be. Board of Public Works v. Columbia College, 84 U.S. (17 Wall.) 521, 21 L.Ed. 687 (1873). This is consistent with the basic requirement of the Constitution: the recognizing State must give a judicial act of the rendering State the *same* effect as it would have in the latter. However, it is axiomatic that it need not—and probably should not—give it *greater* effect than it would be entitled to in the state of its rendition. Ohio v. Chattanooga Boiler Co., 289 U.S. 439, 443, 53 S.Ct. 663, 77 L.Ed. 1307 (1933); Fauntleroy v. Lum, 210 U.S. 230, 237, 28 S.Ct. 641, 52 L.Ed. 1039 (1908); Robertson v. Pickrell, 109 U.S. 608, 3 S.Ct. 407, 27 L.Ed. 1049 (1883); Board of Public Works v. Co-

lumbia College, *supra;* Hampton v. McConnell, 16 U.S. (3 Wheat.) 234, 4 L.Ed. 378 (1818); Restatement (Second) of Conflict of Laws § 107, comment b (1969).[6]

■ The Trustees have not established what, if any, effect would be given to the Washington proceedings by Washington, although the burden thereof is theirs. Commercial Publishing Co. v. Beckwith, 188 U.S. 567, 573, 23 S.Ct. 382, 47 L.Ed. 598 (1903). The original default judgment, upon which the garnishment issued, has now been vacated and the parties to that action are proceeding to a trial on the merits. American was ordered to retain in its possession, "subject to further order of this Court," all funds "subject to Writ of Garnishment issued herein on March 29, 1972, in which the defendants or either of them have any ownership or interest. . . ." Trustees have not shown, and this Court is unable to ascertain, the status and effect of such an order or of the impact, if any, of the Writ of Garnishment in Washington, assuming, as this Court must, the legality of their issuance.[7]

In the case of United States v. Hoffman, 69 F.Supp. 578 (S.D.N.Y.1946) (Rifkind, J.), the Court was confronted with a New Jersey decree in equity (which, according to New Jersey law, has the same effect as a judgment at law in the Superior Court) requiring certain defendants to deposit with the complainant an amount of money or securities sufficient to cover certain claims, such sum to be held by complainant as collateral security, separate from its other funds, "until the further order of this Court." Noting that "this Court can give no greater effect to a New Jersey decree than the Courts of that State give it, and plaintiff can have here, by virtue of that decree, no great-

---

6. If the judgment is open to attack in Washington, it is open to attack *pro tanto* in New York. Williams v. North Carolina, 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577 (1945); *compare* Sherrer v. Sherrer, 334 U.S. 343, 68 S.Ct. 1087, 1097, 92 L.Ed. 1429 (1948).

7. It does appear from the record, however, that Trustees never availed themselves of the provisions of RCW § 7.33.200, which provides for the entry of a judgment in favor of the plaintiff against a garnishee.

er rights than in New Jersey," Judge Rifkind went on to state:

> Had the decree directed defendant to pay a sum certain to plaintiff's assignor, it would be entitled to full faith and credit, and support the relief [for] which plaintiff prays. . . . But the decree falls short of that.. It commands the defendant to deposit a sum certain with the assignor, to be held by the latter "separate from its other funds, *as collateral until the further order of this Court."* Such a decree lacks that finality which is an essential ingredient of plaintiff's claim. 69 F.Supp. at 580. (emphasis in original).

Accordingly, full faith and credit were not required to be given to the New Jersey decree; nor are they required to be given in the case before this Court.

### III.

▇▇▇ Even assuming the Washington proceedings, and the resultant orders, were to be such "judgments" as would otherwise be entitled to full faith and credit, that would nonetheless be denied herein by New York for several reasons. Among these are the fact that Washington lacked *quasi-in-rem* jurisdiction over the *res;* its failure to comply with a local law limiting the power of its courts to act; the reluctance of New York to grant such a judgment any greater effect in New York than it would be entitled to in Washington; and the doctrine that full faith and credit will not be given to judgments which were themselves rendered in violation of the due process clause.

▇▇▇ Judgments which are rendered by a Court lacking jurisdiction are not entitled to recognition, for to grant them any effect at all would be a violation of due process. H. Goodrich, Conflict of Laws § 209, at 395 (4th ed. E. Scoles 1964); *accord,* Restatement (Second) of Conflict of Laws § 104 (1969); *see* National Exchange Bank v. Wiley, 195 U.S. 257, 25 S.Ct. 70, 49 L.Ed. 184 (1904); Grover & Baker Sewing Machine Co. v. Radcliffe, 137 U.S. 287, 11 S.Ct. 92, 34 L.Ed. 670 (1890); Board of Public Works v. Columbia College, 84 U.S. (17 Wall.) 521, 21 L.Ed. 687 (1873). *See generally* Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); Griffin v. Griffin, 327 U.S. 220, 66 S.Ct. 566, 90 L.Ed. 635 (1946); Spokane & Inland Empire R.R. v. Whitly, 237 U.S. 487, 35 S.Ct. 655, 59 L.Ed. 1060 (1915); Bigelow v. Old Dominion Copper Mining & Smelting Co., 225 U.S. 111, 32 S.Ct. 641, 56 L.Ed. 1009 (1912); Brown v. Fletcher's Estate, 210 U.S. 82, 28 S.Ct. 702, 52 L.Ed. 966 (1908); Wisconsin v. Pelican Ins. Co., 127 U.S. 265, 8 S.Ct. 1370, 32 L.Ed. 239 (1888); Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1878).

▇▇▇ "A judgment quasi in rem, like a judgment in rem, affects interests in a thing; but unlike a judgment in rem it affects the interests of particular persons in the thing and not interests of all persons." Restatement of Judgments § 3, at 7 (1942). The purported garnishment in Washington herein was, conceptually at least, *quasi in rem.* Accordingly, the character of the item sought to be garnished—the certificate of deposit—becomes determinative. Prior to its conversion into cash, the certificate of deposit could be viewed as either an item of tangible personal property, or as evidence of a sum of money on deposit in a bank. Viewed as tangible personalty, only a Court sitting in New York, the jurisdiction in which the certificate was located, would have sufficient jurisdiction *quasi in rem* to affect rights therein. Clark v. Williard, 294 U.S. 211, 55 S.Ct. 356, 79 L.Ed. 865 (1935); Bank of Jasper v. First National Bank, 258 U.S. 112, 42 S.Ct. 202, 66 L.Ed. 490 (1922); Green v. Van Buskirk, 72 U.S. (5 Wall.) 307, 18 L.Ed. 599 (1866); 74 U.S. (7 Wall.) 139, 19 L.Ed. 109 (1868); Heydemann v. Westinghouse Electric Mfg. Co., 80 F.2d 837 (2d Cir. 1936); Restatement (Second) of Conflicts of Laws §§ 60–63 (1969).

Washington never had the requisite jurisdictional predicate to enter an order purporting to affect tangible personalty. If the certificate were viewed as evidence of money in a bank deposit, only a Court sitting in Florida, the jurisdiction in which the funds were deposited, would have the requisite jurisdiction. *See* Bank of Jasper v. First National Bank, *supra; cf.* RCW § 7.33.140. Thus, Washington had no jurisdiction under either view. *A fortiori,* once the certificate was converted into cash, and the proceeds thereof kept by American in an account at a New York bank. Even if, as Trustees argue —in an apparent attempt to place themselves within the ambit of Harris v. Balk, 198 U.S. 215, 25 S.Ct. 625, 49 L.Ed. 1023 (1905)—the certificate of deposit were to be viewed as a debt, it would be a debt owing from the First American Bank of North Palm Beach, not one owing from American. This view in no wise benefits Trustees herein, as the writ of garnishment was directed to American, and only purported to attach debts, if any, owing from it to Deductible.

■ Among the limited exceptions to the broad general rule of recognition mandated by the full faith and credit clause are those judgments wherein the Court of the original forum violates a local rule regulating the competence of that Court; such judgments are not entitled to recognition, as they are invalid in the state where rendered. H. Goodrich, Conflict of Laws § 209, at 396 (4th ed. E. Scoles 1964); Restatement of Conflict of Laws § 432, comment b (1934); Restatement (Second) of Conflict of Laws § 105 (1969). *See also* Restatement of Judgments § 7, comments a, b and § 8 (1942). This Court may take appropriate judicial notice of the law of Washington in this context. Adam v. Saenger, 303 U.S. 59, 58 S.Ct. 640, 82 L. Ed. 649 (1938).

■ RCW § 7.33.030 requires the plaintiff "in all cases of garnishment before judgment" to execute a bond which satisfies the requirements of that statute. Under Washington practice, the failure of the plaintiff to execute the bond required by the statute renders the issuance of the writ wrongful. Liebig v. Liebig, 107 Wash. 464, 182 P. 605 (1919). This is the analytical approach which New York courts would take. In In re Estate of Einstoss, 49 Misc.2d 1023, 268 N.Y.S.2d 765 (Sur.Ct.1966), aff'd mem., 27 A.D.2d 644, 277 N.Y.S.2d 623 (2d Dep't 1966), aff'd, 26 N.Y.2d 181, 309 N.Y.S.2d 184, 257 N.E.2d 637 (1970), *noted in* 39 Fordham L.Rev. 536 (1971), the Surrogate determined that a default judgment of an Alaskan territorial court "[had] no binding effect . . . as it was rendered [in a manner which did not comply with a local rule then in force in Alaska]." 49 Misc.2d at 1025, 268 N.Y. S.2d at 767. The Court of Appeals affirmed a denial of recognition to the Alaskan judgment.

The Trustees, upon whom the burden rests with regard to this issue, Commercial Publishing Co. v. Beckwith, 188 U.S. 567, 573, 23 S.Ct. 382, 47 L.Ed. 598 (1903), have not made any showing whatsoever that Washington would not regard a failure to comply with RCW § 7.33.030 as a limitation of the power of her Courts; nor can they do so.

Although a mere error of law or fact in the proceedings prior to judgment, as distinguished from a violation of a local rule regulating the competence of the Court to act, will not, standing alone, support a denial of effect to a judgment, Goodrich, *supra,* § 215; Restatement of Conflict of Laws § 431 (1934); Restatement (Second) of Conflict of Laws § 106 (1969); *see generally* American Express Co. v. Mullins, 212 U.S. 311, 29 S.Ct. 381, 53 L.Ed. 525 (1909); Simmons v. Saul, 138 U.S. 439, 11 S.Ct. 369, 34 L.Ed. 1054 (1891); Wisconsin v. Pelican Ins. Co., 127 U.S. 265, 8 S.Ct. 1370, 32 L.Ed. 239 (1888); Hanley v. Donoghue, 116 U.S. 1, 6 S.Ct. 242, 29 L.Ed. 535 (1885); Maxwell v. Stewart, 88 U.S. (21 Wall.) 71, 22 L.Ed. 564 (1875); Christmas v. Russell, 72 U.S. (5 Wall.) 290, 18 L.Ed. 475 (1866), the Washington courts herein appear not to have followed applicable rules to almost a jurisdictional degree. Whether these omissions would be re-

garded by the courts of Washington as limitations on their competence to act cannot be determined on the present record; however, as the Washington proceedings did not result in a judgment, a limited inquiry into the manner in which they were conducted is not wholly inappropriate.

■ RCW § 7.33.010(1)(b) provides for the issuance of a writ of garnishment by the Clerk of the Superior Court "[w]here the plaintiff sues for a debt and . . . makes affidavit that such debt is just, due and unpaid . . .," provided the plaintiff executes the requisite bond. RCW § 7.33.030. RCW § 7.33.010(1)(c) provides for the same relief "where plaintiff has a judgment . . . ." The writ so issued must set forth the amount which the garnishee is required to hold, RCW § 7.33.090, and must be served together with four answer forms and $10.00. RCW § 7.33.130. "From and after the service of such writ of garnishment, it shall not be lawful, except as directed by the court, for the garnishee to pay *any debt owing to the defendant* at the time of such service, or to deliver, sell or transfer . . . *any personal property or effects belonging to the defendant* in the garnishee's possession or under his control at the time of such service. . . ." RCW § 7.33.140 (emphasis supplied). The garnishee must answer the writ, RCW § 7.33.270, as may the defendant. RCW § 7.33.250. "[A]fter the garnishee's answer is filed the plaintiff must prosecute his proceeding with reasonable diligence." Snyder v. Cox, 1 Wash.App. 457, 462 P.2d 573 (Ct.App.1969). Strict adherence to the statutory procedures is required. Mahomet v. Hartford Insurance Co., 3 Wash.App. 560, 477 P.2d 191 (Ct.App.1970); Portland Ass'n of Credit Men, Inc. v. Earley, 42 Wash.2d 273, 254 P.2d 758 (1953). Thus, if the garnishee denies that he is indebted to the defendant, Washington law requires the plaintiff/garnishor to controvert the garnishee's answer if he wishes

to preserve the validity of his writ. Mahomet v. Hartford Insurance Co., *supra.* His failure to do so will result in a loss of his garnishment lien. *Id.*

■■ As the statute makes clear, the writ reaches only such debts as are owing to the defendant from the garnishee at the time of service thereof. RCW § 7.33.140. Contingent or unliquidated claims are not properly subject to garnishment under Washington practice. Bassett v. McCarty, 3 Wash.2d 488, 101 P.2d 575 (1940); Frieze v. Powell, 79 Wash. 483, 140 P. 690 (1914). The certificate of deposit at issue herein was given to American by Deductible as security for the latter's performance of its obligations under their agreement. Whether American would have an obligation to return some portion of the proceeds of the certificate of deposit to Deductible (*i. e.,* whether it owed a debt to Deductible) would depend on the degree to which Deductible performed its contractual obligations. At the time of issuance and service of the writ, as well as thereafter, American was unable to determine the degree of Deductible's performance and accordingly was unable to ascertain whether it would have to return any part of the $50,000 represented by the certificate given as security. Thus the existence of any debt arising out of this transaction was contingent at best, and seemingly not subject to garnishment.

■ The writ may also run against "any personal property or effects belonging to the defendant in the garnishee's possession." RCW § 7.33.140. Accordingly, it has been held that the interest of a defendant in a certificate of deposit *owned by him* and merely *held by* the garnishee as indemnity against loss [*as stated in the latter's answer*] is properly subject to garnishment in Washington. Holman v. Tjosevig, 136 Wash. 261, 239 P. 545 (1925). Here, however, the garnishee (American), not the defendant (Deductible), owned the certificate and American answered the writ, asserting its ownership of the certificate of de-

posit here in controversy.[8] Having failed to controvert this answer as provided for by statute, RCW § 7.33.240, Trustees are now bound thereby. Mahomet v. Hartford Insurance Co., *supra*; *cf.* RCW § 7.33.180.

Accordingly, neither the certificate of deposit nor the cash proceeds thereof were apparently subject to garnishment under the Washington Code, being neither property of, nor a debt presently owing to, Deductible within the meaning of RCW § 7.33.140.

 In all events, New York would certainly give the proceedings no greater effect than they would be given in Washington. As they seemingly would have no effect in Washington, Mahomet v. Hartford Insurance Co., *supra*, Snyder v. Cox, *supra*, they would likewise be entitled to no effect in New York. *Cf.* New York Life Insurance Co. v. Dunlevy, 241 U.S. 518, 36 S.Ct. 613, 60 L.Ed. 1140 (1916). Moreover, garnishment proceedings are ancillary only, Hillman v. Gray, 163 Wash. 406, 1 P.2d 318 (1931); Tatum v. Geist, 40 Wash. 575, 82 P. 902 (1905), and the plaintiff does not obtain any fixed and enforceable lien on the money garnished until he obtains a judgment against the defendant. Hawley v. Isaacson, 117 Wash. 197, 200 P. 1109 (1921). The default in the original underlying action has been opened, and the parties are now proceeding to a trial on the merits, and it is not at all clear that Washington itself would continue to accord the garnishment—predicated as it was on a default judgment—any effect whatsoever.

 One final point requires brief mention herein. The full faith and credit clause does not mandate the recognition of sister state judgments rendered in violation of due process. In addition to a want of power in the Court rendering the judgment or its failure to abide by its own limiting rules, a judgment may also violate due process if the statute under which it is rendered is unconstitutional. Paste-Ups and Harwyn argue that the Washington garnishment statutes are unconstitutional on their face and in their application.* Recent trends in this area of the law indicate that this may well be a viable argument. *See, e. g.,* Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); Gunter v. Merchants Warren National Bank, 360 F. Supp. 1085 (D.Me.1973) (three judge court). *See also* Lebowitz v. Forbes Leasing and Finance Corp., 326 F.Supp. 1335 (E.D.Pa.1971).

 However, in the absence of a proper tribunal, 28 U.S.C. § 2281, and the requisite notice to the appropriate State officers,[9] 28 U.S.C. § 2284(2), this

---

8. American's claim to ownership appears to be predicated on the theory that the certificate of deposit was a negotiable instrument, N.Y.U.C.C. § 3–104 (McKinney's Consol. Laws, c. 38 1964); RCW 62A.3–104, and, as such, title thereto passed to American by endorsement. N.Y.U.C.C. § 3–201 (McKinney 1964); RCW § 62A.3–201. However, the certificate on its face recites that "This *Deposit* . . . Is Not Assignable Except to This Bank. This *Certificate* may be transferred on the books of the Bank at any time." (Emphasis supplied). Whatever the effect of this language (a question of Florida local law, United States v. Guaranty Trust Co., 293 U.S. 340, 55 S.Ct. 221, 79 L.Ed. 415 (1934); Restatement (Second) of Conflict of Laws § 214 (1969); *but cf. id.* § 216), the Trustees, having failed to controvert American's assertion of ownership of the certificate, are estopped to raise it now. Mahomet v. Hartford Insurance Co. *supra*; Snyder v. Cox, *supra*; *cf.* RCW § 7.33.180. Similarly moot is any reliance placed upon the Bank's conduct in paying the proceeds of the certificate of deposit to American as proof of the latter's ownership thereof.

* For such a ruling, discovered since this opinion was filed, see Olympic Forest Products, Inc. v. Chaussee Corp., 82 Wash.2d 418, 511 P.2d 1002 (1973) (en banc).

9. Actually, no notice to Washington officials would be required were this Court to consider and pass upon the constitutionality, *vel non*, of the statutes in question, as no injunction against their enforcement, operation, or execution is sought. 28 U.S.C. § 2281. No decision of this Court would purport to declare void a Washington statute; assuming the case were proved, the only effect would be to deny recognition to a particular judgment rendered thereunder.

Court will not undertake to pass upon the constitutionality of a state statute, although it has the power to do so in the context of a collateral attack upon a judgment rendered pursuant thereto.

Whichever view of the facts be taken herein, the necessary conclusion is that the fund remaining on deposit in this Court shall be paid and applied first to the satisfaction of the lien of Paste-Ups' judgment, including interest and sheriff's fees, and the balance shall be paid and applied *pro tanto* to the satisfaction of Harwyn's judgment including interest and sheriff's fees.

The foregoing shall constitute the findings of fact and conclusions of law required by Fed.R.Civ.P. 52(a).

So ordered.